```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

SYNOVUS BANK,                    \*

    Plaintiff,                  \*

vs.                              \*

                                        CASE NO. 4:12-cv-244 (CDL)

FIDELITY NATIONAL TITLE          \*
INSURANCE COMPANY,
                                 \*

    Defendant.
                                   \*

### O R D E R

Defendant Fidelity National Title Insurance Company ("Fidelity") insured the superiority of Plaintiff Synovus Bank's ("Synovus") security interest in property that was provided as security for a loan Synovus made to a third party. When the borrower defaulted on Synovus's loan and Synovus started foreclosure on the collateral, Synovus learned of a defect in the title to the property and called upon Fidelity to remove the title defect. An agreement was reached in an attempt to resolve the defect, which facilitated Synovus's foreclosure on the property. After Synovus obtained title to the property through foreclosure, Fidelity insured Synovus's title to the property. When Synovus attempted to sell the property, an interested purchaser refused to consummate the purchase, alleging that Synovus did not have clear title to the property. Synovus called upon Fidelity to clear the title defect. Synovus alleges

in its Complaint that Fidelity failed to do so in a reasonably diligent manner and thus breached its contractual obligation under the policy.  Synovus seeks damages caused by this breach and its litigation expenses, including attorneys' fees.  Fidelity responds that the pleadings do not sufficiently allege a breach of its contractual obligations, and therefore, it is entitled to judgment on the pleadings.  Def.'s Br. in Supp. of Mot. for J. on the Pleadings, ECF No. 10-1.  For the reasons explained in this Order, Fidelity's motion (ECF No. 10) is denied.

## JUDGMENT ON THE PLEADINGS STANDARD

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is appropriate "when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotation marks omitted).  In deciding a motion for judgment on the pleadings, the Court must "accept all facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff."  *Hart v. Hodges*, 587 F.3d 1288, 1290 n.1 (11th Cir. 2009) (per curiam).

FACTUAL ALLEGATIONS

The pleadings allege the following. In November 1999, Synovus, f/k/a Columbus Bank and Trust Company ("CB&T"), made a $13,400,000.00 loan to Twentieth Century Land Corporation ("Twentieth Century") to develop certain real property in Fulton County. To secure the loan, CB&T received a first priority security interest and lien in Twentieth Century's leasehold interest in the property as evidenced by a security deed. The property was owned and leased to Twentieth Century by landowner D.L. Claborn ("Claborn"). As part of the loan transaction, Claborn executed a subordination agreement on October 28, 1999, which was allegedly intended to subordinate Claborn's fee simple interest in the property to the security interest CB&T would acquire. On November 15, 1999, Lawyers Title Insurance Corporation ("Lawyers Title") issued a title insurance loan policy in the amount of $13,400,000.00, insuring CB&T's security interest in the leasehold interest in the property.

In May 2001, CB&T loaned Twentieth Century an additional $2,000,000.00 for improvements to the property, which was also secured by the same security interest and security deed as the original loan transaction. As part of this additional loan transaction, Claborn executed another subordination agreement on May 17, 2001, which was also intended to subordinate Claborn's interest to CB&T's interest in the property. On May 23, 2001,

3

Lawyers Title provided an Endorsement changing the effective date of the title insurance loan policy to May 23, 2001 and increasing the coverage to $15,400,000.00.

Twentieth Century eventually defaulted on the loan. While preparing to foreclose its interest in the property in December 2008, CB&T discovered that the subordination agreements may not have subordinated Claborn's interest to CB&T's interest as intended. Lawyers Title allegedly attempted to cure the title defect by assisting with the preparation and review of an agreement between CB&T and Claborn (the "Marketing Agreement"), which they signed on December 31, 2008. CB&T agreed to foreclose on its interest and market the property for a one-year period from January 6, 2009 to January 6, 2010 and agreed that any proceeds would be allocated between CB&T and Claborn pursuant to the terms of the Marketing Agreement. In exchange, Claborn agreed to release any lien rights in the property and quitclaim his interest in the property to CB&T and to any purchaser described in the Marketing Agreement. On January 2, 2009, CB&T foreclosed its interest in the property and was the successful purchaser. Lawyers Title issued an owner's title insurance policy to CB&T (the "Owner's Policy") insuring CB&T's fee simple interest in the property against title defects or unmarketable title existing as of January 15, 2009 for up to $21,000,000.00. The policy states, in pertinent part:

4

> If the Company establishes Title, or removes the alleged defect, lien, or encumbrance . . . or cures the claim of Unmarketable Title, all as insured, *in a reasonably diligent manner* by any method, . . . it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

Compl. ¶ 38 ECF No. 1-1; Def.'s Mot. for J. on the Pleadings Ex. A, Owner's Policy of Title Insurance, ECF No. 10-2 at 5 (emphasis added).[1]

On April 23, 2010, after the one-year marketing period under the Marketing Agreement expired, CB&T entered into a purchase agreement to sell the property to Asherian Properties Union City, LLC ("Asherian") for $5,100,000.00. On May 14, 2010, Asherian informed CB&T that it concluded, based on an examination of the title and related agreements, that Claborn's interest was not effectively subordinated. Asherian also informed CB&T that Claborn refused to sign a quitclaim deed relinquishing his interest in the property. Synovus alleges that Lawyers Title was made aware of the situation "soon after CB&T was notified." Compl. ¶ 31. Asherian terminated the purchase agreement on May 20, 2010 because it deemed CB&T's interest in the property to be unmarketable due to Claborn's claimed fee simple interest despite Lawyers Title's agreement to

---

[1] The Court may properly consider the Owner's Policy as part of the pleadings because the document is undisputed and central to Synovus's Complaint. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

issue an owner's title insurance policy to any subsequent purchaser.

On June 1, 2010, CB&T changed its name to Synovus Bank. On June 30, 2010, Fidelity merged with Lawyers Title and assumed the contractual duties of the insurer under the Owner's Policy. On October 18, 2010, Synovus filed a formal Notice of Claim with Lawyers Title advising that the title had been rejected as unmarketable and asking Lawyers Title to cover the claim under the Owner's Policy. Fidelity investigated coverage of the claim for more than seven months before accepting the Notice of Claim. During this time, Synovus responded to "multiple inquiries from Fidelity . . . regarding the foreclosure, the Marketing Agreement and other events with which Fidelity was either involved or was aware of through Lawyers Title." Compl. ¶ 41. Fidelity accepted coverage of the claim on June 27, 2011 and retained counsel to resolve the title defect with Claborn. Synovus alleges that Fidelity did not authorize an offer to be made to Claborn until January of 2012 and that it took more than nine months to resolve the title defect after Fidelity accepted the claim.

During the sixteen-month period between the Notice of Claim and the ultimate resolution of the title defect, Synovus made repeated requests to Fidelity to accept its Notice of Claim for coverage, to provide full coverage pursuant to the Owner's

Policy, and to resolve the title defect by negotiating with Claborn in a reasonable manner. Synovus also advised Fidelity that delay was causing Synovus to incur costs of approximately $65,000.00 a month. Synovus seeks to recover these damages allegedly resulting from Fidelity's breach of its contractual duty to remove the title defect in a reasonably diligent manner. Fidelity moves for judgment on the pleadings as to all of Synovus's claims.

## DISCUSSION

Fidelity extracts selected passages from Synovus's Complaint, takes them out of context, and then maintains that Synovus's claim is inconsistent with its own allegations. Specifically, Fidelity seizes upon the following phrase from Synovus's Complaint: "Claborn released any . . . lien rights and quitclaimed his interest in the Property to CB&T." Compl. ¶ 23. Based on this allegation, Fidelity asserts that "there was no title defect existing on the date of the Policy." Def.'s Br. in Supp. of Mot. for J. on the Pleadings 10, ECF No. 10-1. If that were the entirety of Synovus's Complaint, Synovus would be hard pressed to argue that Fidelity breached its duty to remove the defect in a reasonably diligent manner when no such defect existed. But of course, that is not all that Synovus alleges. The select allegations relied upon by Fidelity relate to Claborn's agreement to quitclaim his interest to CB&T, which

7

caused the parties *at that time* to believe that "CB&T had obtained fee simple title to the Property." Compl. ¶¶ 23, 25. Fidelity, however, ignores the rest of Synovus's Complaint, which clearly describes the difficulties encountered in assuring that CB&T obtained a superior interest in the property to Claborn. At this stage of the proceedings, the Court must accept all of Synovus's factual allegations as true and view them in the light most favorable to Synovus. *Hart*, 587 F.3d at 1290 n.1. The Court finds that when Synovus's allegations are read in their entirety, with all reasonable inferences construed in its favor, they clearly establish that even though the parties *believed* that Claborn had effectively subordinated his interest to Synovus, this belief was not substantiated as evidenced by Synovus's inability to sell the property because of the alleged title defect. Synovus may be unable to prove these allegations, but at this stage of the proceedings, the Court must accept them as true. The Court finds that Synovus has sufficiently alleged that a title defect existed and that Fidelity failed to remove it in a reasonably diligent manner. The pleadings establish that a claim for breach of contract has been stated.

Fidelity perceives that the case is not quite this simple. It apparently interprets Synovus's Complaint to allege multiple breaches. Synovus makes it clear that this is not the case. As

8

Synovus explains: "Synovus has not pled two additional distinct breaches based on Fidelity's assistance with the Marketing Agreement and delay and refusal to accept coverage within a reasonable time." Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings 1, ECF No. 11. Synovus does argue that these factual allegations are relevant to its single breach of contract claim, but it does not maintain that they constitute a separate breach of the contract. *Id.* The Court finds that the only breach of contract claim asserted by Synovus is for Fidelity's breach of its contractual duty to remove the title defect in a reasonably diligent manner. To the extent that Synovus's Complaint could be construed to allege additional breaches, the Court finds any such claims have been abandoned.

Because Synovus has sufficiently alleged a breach of contract claim and has alleged facts supporting the recovery of litigation expenses pursuant to O.C.G.A. § 13-6-11, Fidelity is also not entitled to judgment on the pleadings on the claim for these expenses.

## CONCLUSION

For the reasons explained in this Order, Fidelity's Motion for Judgment on the Pleadings (ECF No. 10) is denied.

IT IS SO ORDERED, this 8th day of February, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE